## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL C. RILEY and PREFERRED** | : | **CIVIL ACTION** |
| **KITCHEN EQUIPMENT, INC.** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 14-4208** |
| | : | |
| **JEFF HESSEL and B.S.E. KEYSTONE** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                 **APRIL 14, 2015**

Sound business management often mandates confidentiality agreements between parties evaluating a business combination and agreements governing shareholders' conduct following their departure. When entrepreneurs elect to incorporate their business initiatives, they forego individual rights to claim damages in court suffered by their corporations. In this case, these business principles intersect. After allegedly agreeing to oral and written confidentiality agreements during purchase negotiations, Defendants elected not to proceed with purchasing or merging with Plaintiff corporation. Shortly thereafter, Defendants hired a sales employee subject to a restrictive covenant contained in a shareholders agreement with Plaintiffs.[1] Then, with this employee's aid, Defendants won business from one or two of Plaintiffs' known business relationships.

Plaintiff Paul C. Riley ("Riley") lacks standing to individually pursue the alleged damages but Plaintiff Preferred Kitchen Equipment, Inc. ("PKE") may seek damages for breach of the confidentiality agreements, tortious interference with the shareholder agreement and unjust

---

[1]      The Court notes discrepancies in the spelling of the employee Jennifer Healy's ("Healy") name between the parties. The Court will comply with Plaintiff's spelling of Healy.

enrichment.  In the accompanying Order, we deny Defendants' motion to dismiss except as to the lack of standing for Riley whose claims are dismissed with prejudice.

## I.    Allegations related to Plaintiffs' claims and personal jurisdiction.

PKE represents manufacturers of kitchen equipment in Eastern Pennsylvania, New Jersey and Delaware.   Riley is PKE's sole shareholder.[2]   Defendant B.S.E. Keystone ("BSE") is a Delaware limited liability company and represents manufacturers of kitchen equipment in New Jersey and New York.[3]   Defendant Michael J. Hessel ("Hessel") is an owner of BSE, as well as Vice-President of Sales and a shareholder in Soda Service.

### *BSE explores buying PKE.*

As sales representatives for kitchen equipment manufacturers in the Mid-Atlantic states, the parties knew of each other, with Riley claiming to have seen Hessel in Pennsylvania approximately fifty times in the last ten years.   In early 2011, PKE represented manufacturer Unified Brands in Eastern Pennsylvania, New Jersey and Delaware, and had been doing so for ten years.   PKE also represented manufacturer Lakeside in Eastern Pennsylvania.

Sometime in May 2011, Hessel contacted Riley in Pennsylvania to discuss BSE purchasing Riley's ownership interest in PKE or a merger with PKE.  Riley and Hessel agreed that they would not use any shared information beyond analyzing a potential purchase of PKE or analyzing a potential merger with PKE ("May Oral Agreement").   Thereafter, the parties

---

[2]    While Riley judicially admits that he owns all of PKE's stock, he relies upon and attaches a December 23, 2010 Shareholders' Agreement signed by PKE, him and Healy, a non-party sales representative (the "Healy Agreement").  The Healy Agreement represents that Healy owns 20% of PKE's stock.  Riley and Healy, as a "shareholder", each agreed not to solicit or interfere with any PKE customer for two years after being terminated as both an employee and PKE shareholder.   In an addendum to the Healy Agreement, the parties agreed that their PKE shares shall vest at the rate of twenty percent (20%) per year starting in December 2011.  Healy left PKE before December 2011.  An issue of fact exists as to Healy's status when she left.

[3]    BSE is owned by Soda Service of Long Island, Inc. ("Soda Service"), which is located in New York.

continued to discuss the potential purchase or merger through e-mail, calls, texts, and in person meetings.

On August 10, 2011, Riley and Healy, then a PKE employee, met with Hessel at BSE's New Jersey office. At that meeting, the parties signed a confidentiality agreement (the "August Agreement"). The August Agreement explicitly stated that "all conversations of intellectual property discussed during this meeting will be completely confidential" as well as all follow-up correspondence and that no new information obtained in the meeting can be used to harm any party. At the August 10, 2011 meeting, PKE allegedly disclosed proprietary confidential information concerning Unified Brands, Lakeside and other manufacturers. After the meeting, the parties continued to exchange an unknown quantity of letters, e-mails, calls and texts regarding the purchase of PKE or a merger with PKE. From all indications, Riley was in his Pennsylvania office and Hessel was either in his New York or New Jersey offices. Hessel swears that there were a total of three personal meetings regarding acquiring PKE's stock, with one in New Jersey and two in New York. Other than August 10, 2011, no party identifies the dates of the other two personal meetings.

In October 2011, Defendants proposed a potential purchase of PKE (the "Written Proposal"). BSE sent this Written Proposal to Riley in his Pennsylvania office. After reviewing the document, Plaintiffs informed Defendants of their willingness to move forward with the purchase. Defendants then unilaterally withdrew the Written Proposal, deciding not to purchase or merge with PKE.

### *PKE's business relationships*

Before these May-October 2011 negotiations, PKE had three manufacturer representations material to this case: Unified Brands, Lakeside, and Univex relationships.

3

Unified Brands is a Delaware corporation that manufacturers kitchen equipment. PKE, through Riley, sold Unified Brands products in Pennsylvania for ten years. During the initial discussions with Hessel regarding the potential purchase or merger, Riley divulged information regarding PKE's relationship with Unified Brands. Such information included, among other things, PKE's and Riley's contacts within Unified Brands, Unified Brands' products, information about Unified Brands' employees, sales levels of Unified Brands in certain products, trends of Unified Brands' business, PKE commission rates and compensation paid to PKE employees working with Unified Brands. Riley conveyed all of the information that would be useful in attempting to build a relationship with Unified Brands. Plaintiffs allege that Defendants breached the May Oral Agreement and August Agreement by using this restricted confidential information to obtain Unified Brands' business in eastern Pennsylvania.

Unified Brands also sells kitchen equipment in the New York metropolitan area. During the time when BSE and PKE were discussing the potential purchase or merger, Defendants requested that Plaintiffs assist BSE in becoming the Unified Brands' representative in metropolitan New York. Riley devoted effort in furtherance of this goal. After BSE decided not to purchase or merge with PKE, BSE became Unified Brands' manufacturer representative in metropolitan New York. Having expected that PKE would be purchased by BSE or merge with BSE, the parties did not enter into a written agreement regarding the services provided by PKE and Riley.

During the negotiations between PKE and BSE, Plaintiffs obtained Univex as a new manufacturer.    Univex offered a written contract to PKE to become its manufacturer representative. Believing that a transaction with BSE was imminent, PKE "turned the Univex contract over" to Defendants. BSE did not compensate Plaintiffs for this Univex contract.

4

Similarly, PKE represented Lakeside in eastern Pennsylvania. Plaintiffs allege that Defendants breached the May Oral Agreement and August Agreement by using restricted confidential information in an attempt to take Lakeside's business from PKE. While ending its PKE relationship, Lakeside did not hire BSE.

### BSE hires Healy and gains new representations.

Healy is a former employee of PKE, representing Unified Brands. In the Healy Agreement, she agreed not to interfere with any of PKE's business relationships.

BSE hired Healy shortly after deciding not to buy PKE in October 2011. After BSE hired Healy, PKE warned Defendants that any breach of the Healy Agreement would subject them to liability. In 2012, BSE allegedly directed Healy to assist in obtaining Unified Brands' representation. Plaintiffs do not allege how BSE won this business other than concluding that BSE directed Healy to breach the non-solicit provision in the Healy Agreement. Further, Plaintiffs allege that Healy negotiated with Lakeside, thus violating the Healy Agreement. Plaintiffs claim that, as a result of non-party Healy's alleged breach of the Healy Agreement, PKE lost Unified Brands' and Lakeside's business in Eastern Pennsylvania. In addition to compensatory losses in losing Unified Brands' and Lakeside's business and punitive damages, Riley claims emotional pain, psychological harm, and reputational damage from Defendants' alleged interference with the Healy Agreement.

## II.    Analysis

### A.    This Court properly exercises specific personal jurisdiction over Hessel.

BSE does not contest this Court's exercise of personal jurisdiction. Hessel asserts that this Court lacks personal jurisdiction over him either individually or as BSE's agent. We find specific personal jurisdiction over Hessel.

5

Our analysis begins with Rule 4(a) of the Federal Rules of Civil Procedure, authorizing personal jurisdiction over non-resident defendants to the extent permissible under Pennsylvania Law. Fed.R.Civ.P. 4(a). Under Pennsylvania's Long-Arm Statute, a Pennsylvania court may exercise personal jurisdiction over non-resident defendants to the "fullest extent allowed under the Constitution of the United States." 42 Pa. Con. Stat. Ann. § 5322(b); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

When a defendant raises the defense of personal jurisdiction, the plaintiff bears the burden of a *prima facie* showing of appropriate jurisdiction. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank*, 960 F.2d at 1221 (citation omitted). A "plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citing *Pinker*, 292 F.3d at 368). Plaintiff, however, must support its allegations with affidavits or other competent evidence and may not simply rely on its pleadings. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). The determination of whether a court may exercise specific personal jurisdiction over a defendant is claim-specific. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001). As such, we turn to whether the exercise of personal jurisdiction over Hessel comports with due process requirements. Plaintiffs must show that Hessel is subject to either specific personal jurisdiction or general personal jurisdiction.[4]

---

[4]     There are two types of jurisdiction a court can exercise: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9, 104 S.Ct. 1868, 80 L. Ed. 2d 404 (1984). General jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001) (citing *Helicopteros*, 466 U.S. at 414-416). Specific jurisdiction is appropriate only if

### *This Court lacks general jurisdiction over Hessel.*

Hessel claims he is not subject to general jurisdiction in Pennsylvania because he is not domiciled in Pennsylvania, he was not present in Pennsylvania when served, and he did not consent to suit in Pennsylvania. We agree that Hessel is not subject to the general jurisdiction of this Court. *Goodyear Dunlop Tires Operations v. Brown,* — U.S. —, 131 S. Ct. 2846, 2853-54, 180 L. Ed. 2d 796 (2011); *Farber v. Tennant Truck Lines, Inc.,* — F. Supp. 3d —, 2015 WL 518254, at *11-12 (E.D. Pa. Feb. 9, 2015).

Whether general jurisdiction is applicable to individuals is a question that has not been definitively answered. *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1, 110 S.Ct. 2105, 109 L. Ed. 2d 631 (1990) (recognizing but not deciding that general jurisdiction may apply "*only* to corporations" (emphasis in original)); *Farber*, 2015 WL 518254, at *11-12 ("Domicile aside . . . it remains largely unclear whether a state may exercise general jurisdiction over any nonresident defendant.") Under Pennsylvania law, "[g]eneral jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction." *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 855 F. Supp. 108, 111 (E.D. Pa. 1994); *see also Comerota v. Vickers*, 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001); 42 Pa. Con. Stat. § 5301(a).

Riley claims to have seen Hessel in Philadelphia about fifty (50) times over the last ten (10) years including at least once a year. This argument is insufficient to establish general jurisdiction over an individual in Pennsylvania. *See Farber*, 2015 WL 518254, at *11-12 (finding lack of general jurisdiction over individual defendant despite "lengthy list" of trips to

---

the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Pennsylvania made in scope of employment). Plaintiffs show no evidence that Hessel was present or domiciled in Pennsylvania at the time of service or that he consented to personal jurisdiction in Pennsylvania at any point. The exercise of general jurisdiction over Hessel is improper here.

### *This Court has specific jurisdiction over Hessel.*

Hessel claims this Court lacks specific jurisdiction over him. Specific jurisdiction analysis depends on the relationship between the Plaintiffs' claims and the non-resident's contacts in the forum. As such, specific jurisdiction determinations are made on a claim by claim basis. *Marten v. Godwin,* 499 F. 3d 290, 296 (3d Cir. 2007).

### *i. Specific jurisdiction over the contract claims.*

Under the traditional test of specific jurisdiction applied to contract claims, we ask whether: Defendant purposely directed his activities at the forum; the claim arises out of or relates to at least one of those specific activities; and, whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (citations omitted). We "consider the totality of the circumstances, including location and character of the contract negotiations, the terms of the contract and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d. Cir. 2001).

In many instances personal jurisdiction can arise primarily from Hessel's contract with a forum resident. *Id.* at 256 (citing *Vetrotex.*, 75 F.3d at 152-53). Physical presence in the forum is not required, but specific personal jurisdiction may be exercised where parties reach out beyond one state and create continuing relationships and obligations with citizens in another state" and "when a Defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident." *Id* at 256-57 (quoting *Mellon Bank*, 960

8

F.2d at 1222, 1225). Further strengthening the non-resident's minimum contacts are "informational communications." *Id.* at 256 (citing *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.")).

Here, we may exercise personal jurisdiction over Hessel as his contacts with Pennsylvania were instrumental in both the formation of the alleged agreements and the alleged breach. First, Plaintiffs allege that Hessel reached out to Plaintiffs in Pennsylvania in order to begin contract negotiations. Hessel does not deny this fact. As such, Hessel reached into Pennsylvania in an attempt to create a continuing relationship with Plaintiffs. Hessel then continued the negotiations through text messages, emails, and phone calls with Plaintiffs in Pennsylvania.

These facts support our exercise of specific personal jurisdiction over Hessel. He was aware that the information belonged to a Pennsylvania citizen concerning business relationships in Pennsylvania. We find that, in doing so, he purposely availed himself of the laws of Pennsylvania. *Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc.,* 885 F. Supp. 2d 767, 773 (E.D. Pa. 2012) (citing. *Deutz,* 270 F.3d. at 150). The May Oral Agreement and August Agreement admittedly governed protecting information concerning PKE, a Pennsylvania company. While the negotiations may have taken place over the phone or at a meeting in Blackwood, New Jersey, the contemplated future consequences and the terms of the agreements regarded information belonging to PKE, a Pennsylvania entity. Hessel's alleged repeated communications by electronic devices, rather than physical presence, can establish relationships necessary to assert specific personal jurisdiction. *Deutz,* 270 F.3d. at 150-51.

9

### ii. *Specific jurisdiction over the tortious interference claims*

In evaluating specific jurisdiction over Hessel for the tortious interference claims, we ask whether: the defendant committed an intentional tort; the plaintiff felt the brunt of the harm in the forum such that it can be said to be a focal point of the harm suffered by the plaintiff as a result of that tort; and, the defendant expressly aimed the tortious conduct at the forum. *IMO Industries, Inc. v. Keikert AG.,* 155 F 3d 254, 265-66 (3d Cir. 1998). Generally, "specific jurisdiction cannot be exercised over defendants against whom intentional tort claims have been asserted where the only connection to the forum is the plaintiff's location in the forum." *Isaacs v. Trustees of Dartmouth College*, Civ. A. No. 13-5708, 2014 WL 4186536, at *11 (E.D. Pa. Aug. 25, 2014) (citing *Marten*, 499 F.3d at 299). Foreseeability of plaintiff's injury in the forum is not sufficient to establish personal jurisdiction under the "effects test." *IMO Indus.*, 155 F.3d at 265 ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."). The plaintiff must "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

Applying these elements to the claims for tortious interference with the Healy Agreement, Hessel knew that PKE engaged in business in Pennsylvania and had business relationships in Eastern Pennsylvania. Hessel allegedly knew of a contractual relationship between PKE and Healy. Further, although Hessel allegedly did not appear in Pennsylvania to tortuously interfere with the Healy Agreement, Hessel expressly aimed his allegedly tortious conduct in inducing Healy to breach the Healy agreement so as to interfere with PKE's prospective and existing business relationships particularly with the Unified Brands representation in Eastern Pennsylvania. Allegedly, he knew Healy was arguably subject to the

non-solicitation clause in the Healy Agreement.  As such, the effects of this allegedly tortious conduct "necessarily would have been felt in Pennsylvania." *See Remick* 238 F 3d. at 260. Further, it is not disputed that Hessel had several communications, phone calls, e-mails and texts with individuals located at PKE, including Riley, all of whom Hessel knew were in Pennsylvania.

Further, specific personal jurisdiction over Hessel for the tort claims as a BSE agent in his corporate capacity is appropriate.  Generally a defendant is not individually subject to personal jurisdiction based on his actions in his corporate capacity. *See TJS Brokerage & Co. v. Mahoney*, 940 F. Supp. 784, 788-89 (E.D. Pa. 1996) (citation omitted).  A court may consider a defendant's corporate contacts with the forum by evaluating Hessel's role in BSE's corporate structure; the quality of his contacts; and the extent and nature of his participation in the alleged tortious conduct.  *Mendelsohn,* 885 F. Supp. 2d at 784 (internal citations omitted).  Here, Hessel's role in BSE satisfies our review that he was "a key player in the corporate structure". *Rittenhouse & Lee v. Dollars & Sense, Inc.,* No. 83-5996, 1987 WL 9665 at \*5 (E.D. Pa. Apr. 15, 1987).  He also seemingly possessed the "apparent authority to commit a corporation to contracts and to represent the corporation in contractual discussions and obligations."  *Id.* Lastly, Hessel had quality contacts with the forum regarding the tortious interference.

### B.  Plaintiff Riley lacks standing to pursue any claim.

Riley individually alleges loss of representing two customers including commissions, revenue and profits and "reduction in the value of [his] ownership interest in PKE". Specifically, under the breach of contract claim, Plaintiffs claim that PKE lost more than \$200,000 in annual commissions.

11

To have individual standing, Riley must allege a direct personal injury independent of any injury to PKE. *Hill v. Ofalt*, 85 A.3d 540, 549 (Pa. Super. Ct. 2014). If the injury is to PKE, the corporation is entitled to redress. *Id.* We look to the gravamen of the complaint to determine who suffered the injury. *Id.* Riley has no basis to collect for loss of commissions or business due to the decisions of Unified Brands and Lakeside to no longer do business with PKE. These are losses suffered by PKE. Riley, as a shareholder, does not have standing to bring these losses to PKE, even as a sole shareholder. Riley cannot bring an individual claim for "diminution of value of his interest in PKE" against third parties. Any loss in value to PKE because of a breach of any contract is a claim owned solely by PKE. As such, Riley lacks standing for the claims for breach of contract, all of which relate solely to losses suffered by PKE.

In his tortious interference claims, Riley individually claims "in addition to financial damages, [he] has suffered damages caused by Defendants' acts, including emotional pain and psychological harm and pain and suffering and reputational damages." To recover individual damages for emotional pain, Riley must first show pecuniary legal damage. *Pelagatti v. Cohen*, 370 Pa. Super. 422, 435-36, 536 A.2d 1337, 1343-44 (Pa. Super. Ct. 1987). ("In the absence of pecuniary loss, an action for interference with contract brought for the purpose of recouping damage for loss of reputation only, would be nothing more than a defamation action under a different caption."); s*ee also Dreiling Millenium Trust II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 435 (E.D. Pa. 2011).

As Riley lacks standing to collect any pecuniary legal damage, he cannot claim losses arising from emotional distress or actual harm to reputation unless he can show a contractual loss. These damages are not recoverable unless Riley can plead, which he has not done now

12

after two attempts, any pecuniary damages to him individually as a result of the tortious interference. After two attempts, he cannot allege such an individual pecuniary loss and his claims are dismissed with prejudice.

## C.     PKE states claims for breach of the May Oral Agreement and the August Agreement.

Defendants move to dismiss PKE's breach of contract claims based upon the May Oral Agreement and the August Agreement. We find PKE sufficiently pleads plausible claims for breach of both agreements.

### 1.  *The May Oral Agreement is not barred by New York's statute of frauds.*

Defendants argue that PKE cannot enforce the May Oral Agreement as it is barred by the New York statute of frauds, which they claim governs this analysis. The enforceability of the May Oral Agreement presents a choice of law question between the New York and Pennsylvania statutes of fraud.

The New York statute of frauds, if applicable, requires contracts not to be performed within one year to be in writing. N.Y. Gen. Oblig. Law § 5-701 [a][1]. Pennsylvania's statute of frauds does not contain this provision. 33 Pa. Con. Stat. § 1-6 (2011). Defendants argue that New York law applies. PKE disagrees arguing that Pennsylvania law applies and even under New York law, the May Oral Agreement is enforceable. We find, based on the present record, that both states have equivalent contacts but the qualitative weight of those factors favors Pennsylvania. We apply Pennsylvania law. Following discovery, we may review this choice of law and determine that the facts evidence more significant and qualitative contacts in New York. *See Toll v. Tannenbaum*, 982 F.Supp.2d 541, 551-552 (E.D.Pa. 2013).

As a Pennsylvania federal court exercising diversity jurisdiction, we apply Pennsylvania's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497,

13

61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Echols v. Pelullo,* 377 F.3d 272, 275 (3d Cir. 2004).

"Pennsylvania's choice of law approach adopts 'a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.' " *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 613 (E.D. Pa. 2008) (quoting *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A,2d 796, 805 (1964)). Through this analysis, we first determine whether a real conflict exists, "that is, whether these states would actually treat this issue any differently." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229-30 (3d Cir. 2007). If a real conflict exists, the court must then classify the conflict as true, false, or an unprovided for situation. *Id.* at 230. A true conflict exists "[w]here . . . each jurisdiction has a government policy or interest that would be impaired by the application of the other state's law." *Id.* If there is a true conflict, we determine whether Pennsylvania or New York has a greater interest in the application of its law regarding the Statue of Frauds. *See LeJeune v. Bliss-Salem, Inc.,* 85 F. 3d 1069, 1071 (3d Cir. 1996).

Here, we find a true conflict. Under New York law, a party may not enforce an unwritten agreement if "by its terms" it is not to be performed within one year from the making thereof. N.Y. Gen. Oblig. Law § 5-701 [a][1]. This "one-year performance" invalidates a contract that "according to the reasonable interpretation of its terms, required that it should not be performed within the year." *D&N Boening v. Kirsch Beverages,* 472 N. E. 2d 992, 993 (N.Y. 1984). By contrast, Pennsylvania has no such prohibition. *See, e.g.,* 33 Pa. Cons. Stat. §§ 1-6. There is a true conflict as the laws of New York and Pennsylvania yield contrary results. *See Toll,* 982 F.Supp.2d at 550.

As such, we examine the contacts with each forum under the factors provided in the Restatement (Second) of Conflicts of Law § 188. As the parties negotiated the May Oral

14

Agreement during one phone call from New York into Pennsylvania concerning mutual promises of confidential treatment of shared information, all five factors are indeterminate.[5] The relevant contacts do not confirm a particular nexus or focal point.

Turning to the policy concerns of each forum, we preliminarily find Pennsylvania has the greater interest in enforcing oral contracts exceeding New York's interest in preventing fraud and perjury.  *Inoff v. Craftex Mills, Inc.*, No. 06-3675, 2007 WL 4355385 (E.D.Pa. Dec. 11, 2007).  Here, as Judge Robreno found in *Toll* at the motion to dismiss stage, the Complaint alleges that Defendant specifically reached into Pennsylvania to negotiate and complete the May Oral Agreement.  "New York's interest [in enforcing its statute of frauds] must be accorded less weight when its residents seek to shield themselves from the enforcement of an oral contract that they actively procured outside of New York and could justifiably have been expected to be governed by the law of the jurisdiction where they solicited the agreement."  *Toll v. Tannenbaum*, No. 11-7141 (E.D. Pa. Mar. 15, 2012) (order denying motion to dismiss).

Accordingly, under the governing Pennsylvania law, PKE states a claim for breach of the May Oral Agreement.

---

[5] The first factor is the place of contracting on a telephone call from Hessel in New York to Riley in Pennsylvania.  Each party offered and accepted consideration in their home state.  There is no writing confirming that conversation.    This factor is indeterminate, and relatively insignificant. *See* Restatement (Second) of Conflicts of Laws § 188 cmt. e.  The place of negotiation is the same.  The negotiation took place on a phone call from New York into Pennsylvania.    Compl. ¶ 13.    This factor is also indeterminate. Similarly, the place of performance is in both states, and well as every state in which the parties do business.  This factor is indeterminate. The location of the subject matter (confidential business information) is also indeterminate as each corporation has its confidential information in his home forum.  The domicile, residence, nationality, place of incorporation and place of the business parties weighs equally in favor of each state.

### *2. PKE states a claim for breach of the August Agreement.*

Defendants move to dismiss Count III for breach of the August Agreement relating to the loss of the Unified Brands' business in metropolitan New York. Defendants argue that the only confidential information relating to Unified Brands' business in New York preceded the August Agreement. While Plaintiffs aver that Riley attended at least ten (10) meetings with Defendants regarding Unified Brands, Defendants argue that the August 10, 2011 meeting was not one of those ten. The August Agreement only restricts the use of confidential information discussed at the meeting or in follow up correspondence. Accordingly, any information allegedly used by Defendants in gaining Unified Brands' business could not have been subject to the August Agreement.

Plaintiffs counter that the restricted information used by Defendants is governed by both the May Oral Agreement and the August Agreement. According to Plaintiffs, when the parties met at the August 10, 2011 meeting, Unified Brands was a topic of the discussions. Consequently, Defendants captured Unified Brands' business by using the confidential information exchanged at the August 10, 2011 meeting.

We find PKE adequately states a claim for a breach of the August Agreement relating to Unified Brands' business. While Defendants argue that Plaintiffs have not specifically alleged that the August 10, 2011 meeting was one of the ten meetings related to obtaining Unified Brands' business in metropolitan New York, we find it entirely plausible that the parties exchanged confidential information relating to Unified Brands at the August 10, 2011 meeting. Construing the factual allegations as true, the parties will proceed into discovery on this claim.

16

**D.   PKE states a claim for tortious interference with the Healy Agreement.**

Defendant moves to dismiss the claims for tortious interference with the Healy Agreement, arguing as a matter of fact that the Healy Agreement did not place any restrictions on her ability to solicit business post-employment.[6]  The Healy Agreement is contradictory. First, it references and identifies Healy as a shareholder who owns twenty percent (20%) of all issued and outstanding PKE stock.  It thereafter describes her as part of the collective "shareholders".  It continues to impose obligations upon "shareholders" including at Section 8 not to solicit any customer or other business relationship during her employment and for two years after the termination of "both [her] employment and being a shareholder".  In an Addendum, prepared in a different font but facially signed on the same day, the parties agreed to a vesting of their ownership of individual PKE shares at the annual rate of twenty percent (20%) so that ownership after year one would be equal to twenty percent (20%) of their ownership interest.  If Healy owned twenty percent (20%) of PKE's stock at the time she signed the agreement, as the Healy Agreement states, it is unclear what "vesting" would mean in this context.

Nonetheless, at this stage in the proceedings, we find that PKE states a claim for tortious interference with the Healy Agreement.  Neither party challenges the validity of the Healy Agreement.  Instead the parties differ on whether Healy was subject to Section 8's non-solicitation and non-disparagement clause.  Defendants argue that Healy is not a shareholder because her ownership did not vest while she was employed and is therefore not subject to

---

[6]   To state a claim for tortious interference, a plaintiff must show: (1) the existence of a contract; (2) purposeful action by the defendant specifically intended to harm the existing relation; (3) absence of privilege or justification on the part of the defendant; and (4) actual legal damage as a result of defendant's conduct. *CAT Internet Servs., Inc. v. Magazines.com, Inc.*, No. 00-2135, 2001 WL 8858, at *5 n.1 (E.D. Pa. Jan. 4, 2001) (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1238 (PA. Super. Ct. 1998)).

Section 8. PKE argues that the Healy Agreement defines Healy as a shareholder and that throughout the Healy Agreement there are references to multiple shareholders, allegedly referring to Riley and Healy. Thus, PKE argues that Healy is bound by Section 8 and violated that Section by assisting Defendants in taking business from PKE.

A finding in favor of Defendants on this issue would necessarily require the Court to make factual findings regarding Healy's status as a shareholder. In light of the motion to dismiss standards, that would be inappropriate. We construe the factual allegations in the Complaint as true and refrain from making factual findings. *See Brown & Brown, Inc. v. Cola*, No. 10-3898, 2010 WL 5258067, at *10 (E.D. Pa. Dec. 22, 2010). The negotiations and context of those discussions leading to the contradictory provisions in a document must be subject to discovery and further review. Accordingly, Defendants' Motion to Dismiss the tortious interference claims based on the lack of any contractual obligation by Healy is denied.

### E. PKE states a claim for unjust enrichment.

Defendants move to dismiss PKE's claim for unjust enrichment. PKE claims it devoted substantial information, effort and skill and attended meetings to assist BSE in obtaining the representation of Unified Brands in New York. BSE in fact obtained the business of Unified Brands. PKE also claims that, during its negotiations, it turned over the Univex contract to BSE and BSE did not pay for this business. The parties do not dispute the absence of a written contract governing this conduct. PKE's argument is that BSE inequitably retained the benefit for which it should compensate PKE.

PKE must allege that: (1) it conferred benefits on the Defendants; (2) the Defendants appreciated the benefit; and (3) acceptance and retention by the Defendants of the benefits, under the circumstances, would make it inequitable for the Defendants to retain the benefit without

18

paying for the value of the benefit. *Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A 2d. 1127, 1137 (Pa. Comm. Ct. 2005). Our analysis necessarily depends "on the unique factual circumstances of each case". *Styer v. Hugo,* 619 A.2d 347, 347-50 (Pa. Super. Ct. 1993). Our focus is "not on the intention of the parties, rather on whether the Defendant was unjustly enriched." *Stoeckinger v. Presidential Fin. Corp. of Del Valley,* 948 A.2d 828, 833 (Pa. Super. Ct. 2008). Thus, the "most significant element of the doctrine is whether the enrichment of the defendant is *unjust.*" *Styer*, 619 A.2d at 350 (emphasis in original).

PKE states a claim for unjust enrichment. It specifically alleges that it devoted information, effort, strategic planning skills and attended meetings in New York to benefit BSE in obtaining the Unified Brands' kitchen equipment business in New York. Further, it is alleged that Defendants requested PKE assist in this endeavor. We find that this situation to be inequitable. Defendants obtained a benefit with a major assist from PKE, who only agreed to do so because of its expectation of a benefit. Defendants' argument that since PKE assisted Defendants without a written agreement it cannot maintain a claim turns the doctrine of unjust enrichment on its head. If a written contract were present, the claim would not be unjust enrichment but a breach of contract. The doctrine of unjust enrichment is the appropriate remedy where there is no contract governing the parties' transaction and the result of the transaction is unjust.

PKE also specifically alleges that it obtained Univex as a new manufacturer, Univex offered PKE a written contract, and PKE turned that contract over to BSE to allow it to become Univex's representative. PKE did this, it alleges, because the parties were working toward a purchase or merger. These actions confer a benefit on BSE. Accordingly, as there is no dispute that BSE accepted the benefit and appreciated the benefit in the form of a new representation

19

relationship.  The only issue is whether Defendants unjustly retained the benefit.  We find that the unique factual scenario proceeds to discovery.  PKE and BSE were working towards a purchase or merger and it may create an injustice on PKE for BSE to retain the benefit of the Univex contract without making any payment to PKE.  Discovery may ultimately show there are no circumstances that give rise to an inequitable result but at this point we find that PKE states a claim for unjust enrichment with regard to the Univex contract.  *See Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434 (E.D. Pa. 2007).

## III.    Conclusion

PKE, not Riley, may proceed into discovery against both Defendants on the sufficiently pled Amended Complaint.  Discovery should greatly aid the parties and the Court in determining if these issues warrant the jury fact-finding.